# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------

SHIVA STEIN,                          :
                                      :
        Plaintiff,            :   Case No. _____
                                      :
v.                                    :
                                      :   **COMPLAINT FOR VIOLATIONS OF**
TABLEAU SOFTWARE, INC., ADAM          :   **SECTIONS 14(e), 14(d) AND 20(a) OF**
SELIPSKY, BILLY BOSWORTH, BROOKE      :   **THE SECURITIES EXCHANGE ACT**
SEAWELL, CHRISTIAN CHABOT,            :   **OF 1934**
CHRISTOPHER STOLTE, ELLIOTT           :
JURGENSEN, JR., GERRI MARTIN-         :   **JURY TRIAL DEMANDED**
FLICKINGER, HILARIE KOPLOW-           :
MCADAMS, JOHN MCADAM, and             :
PATRICK HANRAHAN,                     :
                                      :
        Defendants.           :

---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Tableau Software, Inc. ("Tableau or the "Company") and the members Tableau board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Tableau by salesforce.com, inc. and its affiliate ("Salesforce").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the

"Solicitation Statement") to be filed on July 3, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Sausalito Acquisition Corp., a wholly-owned subsidiary of salesforce.com, inc., will merge with and into Tableau (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Tableau common share issued and outstanding will be converted into the right to receive 1.103 shares of Salesforce common stock (the "Merger Consideration").

3.      Defendants have now asked Tableau's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Tableau's financial projections relied upon by the Company's financial advisor, Goldman Sachs & Co, LLC ("Goldman Sachs"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs; and (iii) the sales process. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Tableau stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tableau's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant is incorporated in the State of Delaware and therefore in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Tableau is incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Tableau common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Adam Selipsky ("Selipsky") is the Company's President, and Chief Executive Officer ("CEO"). Selipsky has been a member of the Board since September 2016.

11.     Individual Defendant Billy Bosworth has served as a member of the Board since May 2015.

12.     Individual Defendant Brooke Seawell has served as a member of the Board since November 2011.

13.     Individual Defendant Christian Chabot is one of the Company's co-founders and has served as Chairman of the Board since the Company's inception in 2003, and was the Company's President and CEO from 2003 until September 2016.

14.     Individual Defendant Christopher Stolte is one of the Company's co-founders and has served as a member of the Board since the Company's inception in 2003.

15.     Individual Defendant Elliott Jurgensen, Jr. has served as a member of the Board since September 2012.

16.     Individual Defendant Gerri Martin-Flickinger has served as a member of the Board since January 2018.

17.     Individual Defendant Hilarie Koplow-McAdams has served as a member of the Board since December 2016.

18.      Individual Defendant John McAdam has served as a member of the Board since December 2012.

19.     Individual Defendant Patrick Hanrahan is one of the Company's co-founders and has served as a member of the Board since the Company's inception in 2003.

20.     Defendant Tableau is incorporated in Delaware and maintains its principal offices at 1621 North 34th Street, Seattle, Washington 98103.  The Company's common stock trades on the New York Stock Exchange under the symbol "DATA."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction Undervalues Tableau

23.     Tableau offers software products. The Company's products are used by people of skill levels across all kinds of organizations. Its technologies include visual query language (VizQL), which translates drag-and-drop actions into data queries and then expresses that information visually, and Hybrid Data Architecture, which combines the power of Live Query and In-Memory Data Engines. VizQL unifies the formerly disparate tasks of query and visualization and allows users to transform questions into pictures without the need for software scripts, chart wizards or dialogue boxes. Live Query Engine allows users to connect to volumes of data in its existing format and location. In-Memory Data Engine enables users to import amounts of data into its own in-memory database.

24.     On June 10, 2019, the Company and Salesforce jointly announced the Proposed Transaction:

> SAN FRANCISCO and SEATTLE, June 10, 2019 /PRNewswire/ -
> - Salesforce (NYSE:CRM), the global leader in CRM, and Tableau
> Software (NYSE: DATA), the leading analytics platform, have
> entered into a definitive agreement under which Salesforce will
> acquire Tableau in an all-stock transaction, pursuant to which each
> share of Tableau Class A and Class B common stock will be
> exchanged for 1.103 shares of Salesforce common stock,
> representing an enterprise value of $15.7 billion (net of cash),
> based on the trailing 3-day volume weighted average price of
> Salesforce's shares as of June 7, 2019.
>
> * * *
>
> **Details Regarding the Proposed Tableau Acquisition**
>
> Salesforce and Tableau have entered into a definitive agreement
> under which Salesforce will acquire Tableau in an all-stock

transaction, pursuant to which each share of Tableau Class A and Class B common stock will be exchanged for 1.103 shares of Salesforce common stock, representing an enterprise value of $15.7 billion (net of cash), based on the trailing 3-day volume weighted average price of Salesforce's shares as of June 7, 2019. The transaction is intended to be tax free for Tableau stockholders (except with respect to cash for fractional shares).

The transaction has been approved by the boards of directors of both companies.

Under the terms of the transaction, Salesforce will commence an exchange offer to acquire all of the outstanding shares of Tableau. The acquisition of Tableau is expected to be completed during Salesforce's fiscal third quarter ending October 31, 2019, subject to customary closing conditions, including the tender by Tableau stockholders of shares representing a majority of the Tableau common stock voting power, assuming all shares tendered or converted will be counted on a one-vote-per-share basis, and the receipt of regulatory approvals. Christian Chabot, Patrick Hanrahan and Christopher Stolte, the founders of Tableau, have all entered into an agreement with Salesforce in connection with the transaction, and have indicated that they intend to tender all of their shares in the exchange offer.

**Financial Impact to Salesforce of the Proposed Tableau Acquisition**

FY20 Revenue: The transaction is expected to increase Salesforce's FY20 total revenue by approximately $350 million to $400 million. This estimate reflects a fair value adjustment to reduce unearned revenue and unbilled unearned revenue by approximately 30%, adjustments related to the combined customer base, and inter-company revenue elimination, as required by U.S. GAAP. FY20 Revenue is now expected to be $16.45 billion to $16.65 billion, an increase of 24% to 25% year-over-year.

FY20 non-GAAP operating margin: The transaction is expected to decrease Salesforce's FY20 non-GAAP operating margin by approximately (75) basis points year-over-year.

FY20 non-GAAP EPS:  As discussed further below, guidance updates for GAAP EPS for all periods discussed are not currently available and Salesforce expects to provide the applicable updates when the transaction has closed and the purchase accounting has been completed. The acquisition is expected to decrease FY20

non-GAAP diluted EPS by approximately ($0.37) to ($0.39). FY20 Non-GAAP EPS is now expected to be $2.51 to $2.53. This estimate assumes fully diluted share count of approximately 900 million, and a non-GAAP tax rate of 22.5%.

FY20 Operating Cash Flow: Operating Cash Flow is now expected to be in the range of 21% to 22% year-over-year.

These estimates assume a close date on or about October 1, 2019, and certain assumptions related to non-GAAP tax rates. Actual results could differ materially based on the actual transaction close date. Salesforce is not currently able to prepare an accurate forecast for the full year impact of the acquisition on GAAP EPS and will not be able to do so until the purchase accounting is concluded after the transaction closes. The impact on GAAP EPS is expected to be more significant than for non-GAAP EPS due to the additional stock-based compensation charges and the impact of other various non-cash items, including amortization of acquisition-related intangibles and income tax adjustments.

Non-GAAP Financial Measures: This press release includes information about non-GAAP operating margin, non-GAAP EPS and non-GAAP tax rates (collectively the "non-GAAP financial measures"). The primary purpose of using non-GAAP financial measures is to provide supplemental information that may prove useful to investors who wish to consider the impact of certain non-cash or non-recurring items on the company's operating performance and to enable investors to evaluate the company's results in the same way management does. Non-GAAP operating margin and non-GAAP EPS estimates exclude the impact of the following non-cash items: stock-based compensation, amortization of acquisition-related intangibles, as well as income tax adjustments. The non-GAAP tax rate estimate excludes the tax adjustments and tax consequences associated with the above excluded non-cash expense items. The method used to produce non-GAAP financial measures is not computed according to U.S. generally accepted accounting principles and may differ from the methods used by other companies. Non-GAAP financial measures are not meant to be considered in isolation or as a substitute for comparable GAAP measures and should be read only in conjunction with the company's consolidated financial statements prepared in accordance with GAAP.

**Advisors**

Bank of America Merrill Lynch is serving as exclusive financial advisor to Salesforce and Wachtell, Lipton, Rosen & Katz and Morrison & Foerster LLP are serving as legal counsel. Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Tableau and Cooley LLP is serving as legal counsel.

25.     The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth.  More specifically, on May 2, 2019, Tableau announced stellar first quarter 2019 financial results:

- Total revenue was $282.5 million, up 15% year over year.
- Total annual recurring revenue was $902.0 million as of March 31, 2019, up 41% year over year.
- Subscription annual recurring revenue was $510.1 million as of March 31, 2019, up 115% year over year.

26.     Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

27.     It is therefore imperative that Tableau's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

28.     On July 3, 2019, Tableau and Salesforce jointly filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or

omissions.  However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

29.     The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by Goldman Sachs, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

30.     For the Initial Five-Year Plan and Related Extrapolations and the Updated Five-Year plan and Related Extrapolations (the "Projections") prepared by Company management for Tableau, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) non-GAAP Gross Profit, (2) EBIT, and (3) Unlevered Free Cash Flow, but fails to disclose: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G. Solicitation Statement 32-33.

31.     With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the projected terminal values for the companies; (ii) the companies' unlevered free cash flows, including the line items used to calculate them; and (iii) the number of fully diluted outstanding shares of the Company as of June 7, 2019. Solicitation Statement at 37.

32.     With respect to the *Public Comparable Analysis*, the Solicitation Statement omits the financial metrics for each of the selected companies, or even summary statistics as to those

same financial metrics. Instead, the Solicitation Statement discloses only the reference range selected by Goldman Sachs. Solicitation Statement at 40.

33.    With respect to the *Present Value of Future Share Price* Analysis, the Solicitation Statement fails to disclose: (i) Goldman Sachs' basis for applying a range of enterprise value to forward revenue multiples of 7.5x to 8.5x to revenue estimates of the Company for the calendar years 2019 through 2021; (ii) the individual inputs and assumptions underlying the discount rate of 8.5%; and (iii) the fully diluted outstanding shares of the Company. Solicitation Statement at 41.

34.    The Solicitation Statement also fails to disclose any financial projections of Salesforce. This information is necessary because Tableau shareholders will become Salesforce shareholders following the close of the Proposed Transaction by virtue of them receiving Salesforce stock.

35.    In regards to the *Background of the Offer and the Merger*, the Solicitation Statement also omits material information regarding the background of the Proposed Transaction.   For example, although the Solicitation Statement indicates that Individual Defendants Selipsky, non-parties Damon Fletcher, Keenan Conder, Dan Miller, and Mark Nelson have entered into new lucrative employment agreements with Salesforce in connection with the Proposed Transaction, the Solicitation Statement fails to disclose any information regarding the timing and nature of communications regarding future employment of the Company's officers and directors, including who participated in such communications. Communications regarding post-merger employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information

provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the tender offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

39.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the tender offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary

11

in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

41.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

42.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

43.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the

tender offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

45.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the tender offer.

47.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

49.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the

tender offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

50.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Tableau within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Tableau, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Tableau, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Tableau, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 10, 2019

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By:   /s/ Gina M. Serra
    Brian D. Long (#4347)
    Gina M. Serra (#5387)
    300 Delaware Avenue, Suite 1220
    Wilmington, DE 19801
    Telephone: (302) 295-5310
    Facsimile: (302) 654-7530
    Email: bdl@rl-legal.com
    Email: gms@rl-legal.com

    *Attorneys for Plaintiff*